IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| KATHERINE M. FERRIS, | * | |
| Plaintiff | * | |
| v. | * | CIVIL No. 12-2610-JKB |
| HOUSING AUTHORITY OF THE CITY OF ANNAPOLIS, | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Katherine M. Ferris ("Plaintiff") brought this suit against the Housing Authority of the City of Annapolis ("Defendant") alleging employment discrimination on the basis of race and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.* Now pending before the Court is Defendant's motion to dismiss (ECF No. 4). The issues have been briefed and no hearing is required. Local Rule 105.6. For the reasons set forth below, the motion will be GRANTED IN PART and DENIED IN PART.

### I.    BACKGROUND[1]

Plaintiff is a white woman who was employed by Defendant as an executive assistant from June 2007 until her employment was terminated on March 11, 2011. (Compl. ¶¶ 3, 10, ECF No. 1.) Plaintiff alleges two incidents of harassment before she was terminated. First, Plaintiff alleges that Cynthia Carter, Vice Chairwoman of Defendant's Board of Commissioners,

---

[1] The facts are recited here as alleged by the Plaintiff, this being a motion to dismiss. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

1

widely distributed two emails "[u]nduly criticizing" Plaintiff's work product. (*Id.* ¶ 10(a), Ex. A at 4.)

Second, Plaintiff complains of an incident involving Vincent Leggett, Defendant's Executive Director and one of the people for whom Plaintiff provided administrative support. (*Id.* ¶ 10(b), Ex. A at 3.) In March 2011, Plaintiff suggested to Mr. Leggett that Defendant's application for lifetime membership in the NAACP was an example of Defendant "spending funds in ways that were never done before." (*Id.* Ex. A at 3.) "A day or two later, [when] the lifetime membership certificate card from the NAACP arrived," Mr. Leggett suggested that the certificate should be displayed on the "wall directly behind [Plaintiff's] head." (*Id.*) Plaintiff alleges that she objected to this suggestion, and Mr. Leggett responded by "openly mock[ing] Plaintiff" in the presence of other employees. (*Id.* ¶ 10(b).) Four days later, Defendant terminated Plaintiff's employment without explanation. (*Id.* ¶ 10(c).) Plaintiff alleges that she timely filed with the EEOC a complaint about her termination.

Plaintiff alleges that Defendant hired an unqualified black woman to replace her, and then rehired Plaintiff when her replacement resigned. (*Id.* ¶¶ 10(d), (e).) However, Defendant did not restore Plaintiff's salary and benefits when she was rehired, and Plaintiff alleges that she has been repeatedly harassed since returning. (*Id.* ¶¶ 10(g)-(i).) Plaintiff further alleges that "Defendant did not initiate any such disciplinary actions against similarly situated and employed African American employees at the workplace who engaged in conduct [similar to the conduct] Plaintiff was accused of being engaged in." (*Id.* ¶ 12.)

Finally, Plaintiff alleges that she had a confrontation with a co-worker on September 22, 2011. (*Id.* Ex. A at 19-20.) Plaintiff and the co-worker disagreed over whether it was proper for

Defendant to send a mailing to certain of its vendors. (*Id.*)  Plaintiff asked her co-worker to leave her office, and the co-worker responded by repeatedly yelling that Plaintiff is "a racist." (*Id.*)

On August 30, 2012, Plaintiff filed this suit alleging employment discrimination on the basis of race. (*Id.* ¶ 1.)  Defendant now moves to dismiss the complaint for failure to state a claim for which relief can be granted.

## II.     LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) is a test of the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  To pass this test, a complaint need only present enough factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff may not, however, rely on naked assertions, speculation, or legal conclusions. *Bell Atl. v. Twombly*, 550 U.S. 544, 556-57 (2007).  In assessing the merits of a motion to dismiss, the court must take all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  If after viewing the complaint in this light the court cannot infer more than "the mere possibility of misconduct," then the motion should be granted and the complaint dismissed. *Iqbal*, 556 U.S. at 679.

## III.    ANALYSIS

Title VII makes it unlawful for an employer to discriminate against "any individual with respect to his compensation, terms, conditions, or privileges of employment" on the basis of "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  It also forbids employers from retaliating against an employee who has openly opposed such discrimination or

any other employment practice that the statute makes unlawful. 42 U.S.C. § 2000e-3(a). It does not provide a remedy for an employer's retaliation against an employee for opposing practices, even if discriminatory, that are outside the scope of the statute. *See Crowley v. Prince George's County, Md.*, 890 F.2d 683, 687 (4th Cir. 1989). Plaintiff alleges claims under Title VII for disparate treatment, retaliation and hostile work environment.

### a. Disparate Treatment

Defendant has not met its burden of establishing that the complaint fails to state a claim for disparate treatment for which relief can be granted. In order to state a claim for disparate treatment, Plaintiff must allege facts to support the inference that Defendant took an adverse employment action against her and that it did so with discriminatory intent. *See Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294-95 (4th Cir. 2010) ("The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."); *Goldberg v. B. Green & Co.*, 836 F.2d 845, 847-48 (4th Cir. 1988) (ADEA). A *prima facie* case of disparate treatment consists of either direct evidence of discriminatory intent, or circumstantial evidence consisting of: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class. *See White v. BFI Waste Servs.*, 375 F.3d 288, 295 (4th Cir. 2004).

Plaintiff alleges that she expressed discomfort to her supervisor about a proposal to display a certificate from the NAACP near her desk, and she was terminated four days later without explanation. The question whether these allegations adequately support a plausible inference that she was terminated because of her race is a close one. The ultimate question at issue is whether the evidence indicates a nexus between a discriminatory attitude and Plaintiff's

termination. *See Merritt*, 601 F.3d at 300-01 ("in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced"). This claim survives the motion to dismiss because Defendant's otherwise excellent briefs do not address whether Plaintiff's allegations sufficiently support a claim for disparate treatment. As explained more fully below, the Court agrees with Defendant that this incident does not support a claim for a hostile work environment because it is not sufficiently severe or pervasive to alter the terms and conditions of employment. However, the question here is whether the incident—which involved a dispute between a supervisor and his subordinate over the display of a certificate from a race-based advocacy group and took place four days before Plaintiff was terminated without explanation—renders plausible the inference that Plaintiff's termination was motivated by discriminatory intent. The Court cannot hold that the inference is implausible without further argument from Defendant.[2]

To the extent that Plaintiff attempts to rely on other allegations in the complaint, those allegations are insufficient to state a claim for disparate treatment. Plaintiff alleges that Ms. Carter widely distributed two emails "[u]nduly criticizing" Plaintiff's work product. (Comp. ¶ 10(a).) Plaintiff has not identified any facts that would support an inference that these actions were racially motivated; the emails complained about Plaintiff's "competencies," and Plaintiff speculates that the emails were motivated by Ms. Carter's desire to see her friend take Plaintiff's position. (Compl. Ex. A at 4.) The mere fact that the email was written by a person of a different race than Plaintiff's is insufficient to support an inference of discriminatory intent.

---

[2] Defendant argues that the disparate treatment claim should be dismissed because the complaint acknowledges the possibility that Plaintiff was fired as the result of a political *quid pro quo*. However, Plaintiff is not required to establish that this non-discriminatory rationale is pretextual in order to state a *prima facie* case and survive a motion to dismiss. For similar reasons, it would be inappropriate for the Court to conclude at this stage—without the benefit of a factual record—that the same person made the decisions to fire and rehire Plaintiff.

Similarly, Plaintiff has failed to plead a *prima facie* case of disparate treatment under the *McDonnell Douglas* burden-shifting framework.  In order to state a claim under this framework, Plaintiff is required to identify a similarly situated employee of a different race whom Defendant treated differently.  *See Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).  The complaint alleges that "Defendant did not initiate any such disciplinary actions against similarly situated and employed African American employees at the workplace who engaged in conduct" similar to Plaintiff's alleged conduct.  (Compl. ¶ 12.)  However, this allegation is completely conclusory; the complaint contains no factual allegations to support this assertion and fails to identify any employee who was similarly situated.  Therefore, this allegation does not support a claim for which relief can be granted.

      b. **Retaliation**

The complaint fails to state a claim for retaliation under Title VII.  In order to establish a *prima facie* case of retaliation, Plaintiff must show (1) that she engaged in an activity protected by Title VII; (2) that Defendant took an adverse employment action against her; and (3) that a causal connection exists between (1) and (2).  *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).  Plaintiff's complaint fails to plead facts sufficient to support a plausible inference that her EEOC complaint had a causal connection with an adverse employment action.

Plaintiff argues that Defendant retaliated against her for making an EEOC complaint by (1) failing when she was rehired to restore her salary, benefits and seniority to their previous level, and (2) repeatedly harassing her in the workplace after she was rehired.  In light of the rulings above, the Court assumes for this analysis that Plaintiff's complaint to the EEOC about her termination constitutes an activity protected by Title VII.  The Court need not determine whether the two alleged acts of retaliation constitute adverse employment actions, because the

complaint does not plead *any* facts to support an inference of a causal connection between Plaintiff's EEOC complaint and the alleged retaliation.  Most notably, Plaintiff fails to plead any basis for the assumption that Defendant and its agents were aware of her EEOC complaint.  *See Causey v. Balog*, 162 F.3d 795, 803-804 (4th Cir. 1998); *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998).  Plaintiff does not allege that the EEOC contacted Defendant in connection with its investigation, that Plaintiff informed Defendant of the EEOC complaint when she negotiated her rehiring, or that Defendant's agents who were responsible for the alleged retaliation had knowledge of the EEOC complaint.  (*See* Compl. Ex. A at 13-14, 19-20.)  Therefore, Plaintiff has failed to state a claim for retaliation for which relief can be granted.

### c. Hostile Work Environment

Plaintiff has not pled facts to support a claim for hostile work environment.  To demonstrate a racially hostile work environment, Plaintiff must show that there is (1) unwelcome conduct; (2) that is based on the Plaintiff's race; (3) which is sufficiently severe or pervasive to alter Plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.  *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir. 2010) (quoting *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 192 (4th Cir. 2000)); *White v. BFI Waste Services, LLC*, 375 F.3d 288, 296-97 (4th Cir. 2004).  The complaint describes only two instances of conduct that could even arguably be construed as race-related harassment.  First, Plaintiff alleges that Mr. Leggett rebuked her for objecting to the suggestion that a certificate for lifetime membership in the NAACP be hung behind Plaintiff's head at her desk.  (Compl. ¶ 10(b).)  Second, Plaintiff alleges that during a confrontation, her co-worker repeatedly yelled that Plaintiff is "a racist."  (*Id.* Ex. A at 19.)  Even assuming that both of these

incidents constitute race-based harassment, two isolated incidents are generally not sufficiently severe or pervasive to "alter the 'conditions' of the victim's employment." *Mosby-Grant*, 630 F.3d at 335, 336-37; *see Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment"). Therefore, Plaintiff has failed to state a claim for a racially hostile work environment.

## IV.   CONCLUSION

Accordingly, an order shall issue GRANTING IN PART and DENYING IN PART Defendant's Motion to Dismiss (ECF No. 4).

Dated this  1st  day of March, 2013

BY THE COURT:

_/s/_
James K. Bredar
United States District Judge